Good morning, Your Honors. May it please the Court, Douglas Beteta for Plaintiff and Appellant Bill O'Reilly O'Neill. I'd like to reserve two minutes for reply. Sure. The Personal Litigation Reform Act only requires that Mr. O'Neill exhaust administrative remedies as are practically available. Mr. O'Neill never received an orientation manual referencing the San Francisco County Jail's grievance procedure. I don't see where that fact is in the record. I saw a footnote in the brief that said if we went back, this is what he would say, but I never found where he said that back at the time when it was relevant back in district court. What Mr. O'Neill said was that he was not aware. That's different than what you just said. Whether he was aware or he didn't get the book are two different things. That's correct, Your Honor. Is there anything in the record that said he didn't get the book? There's a reasonable inference to be drawn from the fact that he says that he did not know about it. Well, he might not know about it even if he'd been given the book. If he didn't read the book, then he could still plausibly say, I didn't know about it. That's right, Your Honor. But in addition to that, Mr. O'Neill was arrested, and on that very same day, he was processed for intake and severely beaten by seven sheriff's deputies and immediately thereafter placed on solitary confinement where he remains for five months. He didn't have an opportunity to receive the order. So he was, according to the allegation, he was in solitary in the San Francisco County Jail? Yes, Your Honor. And then, according to the allegations, I mean, it's pro se, so it's a little difficult to parse. He is then sent to San Quentin immediately from solitary. Is that the idea? That's what he alleged, Your Honor. And is one of the arguments that, given that he was placed immediately in solitary, it was impossible or sufficiently difficult to make unavailable, too difficult to file a grievance? Is that the argument? There's two arguments, Your Honor. The first argument is that as Mr. O'Neill was placed immediately in solitary confinement, he did not have an opportunity and he was not provided with the orientation book. And secondly, given the circumstances of confinement, that he was placed in solitary confinement, not only that, but also that he was beaten by seven sheriff's deputies and that beating covered up, Mr. O'Neill was reasonable, even if he did know about the grievance procedure, to not file any kind of grievance under the circumstances because that's a rational enemy we wouldn't have when faced with those circumstances. Mr. O'Neill has a criminal history. How many arrests do we have? Do we know? We don't know, Your Honor. Okay. Do we know whether he's been arrested in San Francisco before? It's not clear from the record, Your Honor. Okay. He knew enough to file a citizen's complaint, he said. That's right, Your Honor. We don't have a citizen's complaint in the record. It's not in the record. Where did he file it? It is my understanding he filed it with City Hall. Okay. But he knew enough to do that. This is not in the record, Your Honor, but I believe it was that he asked his defense attorney what he should do, and his defense attorney told him he should file a citizen's complaint. While the suit was pending, could he still have filed, exhausted his remedies by going back and filing a complaint against the officers? He could have, Yes, Your Honor. And, in fact, he did. He has. It's somewhat revealed in the record that he was going to, and he was in the process of doing so. So he's now cured the defect? He believes he has, Your Honor. Okay. As the prison, as the San Francisco processed it? It is my understanding that the jail has looked at it. Why wouldn't that moot this? He's gone back. He's now cured it. He's done what he's supposed to do in the first place. Why doesn't that moot this? Your Honor, I would submit that it's very likely that the sheriff's deputy in the San Francisco County Jail would argue that the statute of limitations has passed, and if he brings us an action now, a new action now, it should be barred by the statute of limitations. Or maybe not a statute of limitations so much as a requirement under the administrative exhaustion that he needed to file the complaint earlier. I mean, I'm making this up, but I have a feeling that if I were defending the sheriff's office, I might say, you know, I'd look for some sort of a limitation period. You've got to file a grievance within the next period of the event you're complaining of. But we don't know this? We don't. My impression is San Francisco's grievance procedure doesn't have a time limit. Is that right? The procedure manual that was attached and provided in the district court does not set forth any time limits. I see. So it may or may not show up as a defense to the exhaustion. Okay. Would the statute of limitations for 1983 still apply? Yes, I believe so, Your Honor. So the city might have an argument, the officer might have an argument that the statute of limitations would be? Not off the top of my head, Your Honor. Do you know the status of the grievance? Are they working on it? My understanding was that it was denied, that there's nothing further going on with the grievance. What are we to make of his statement that he was in fear of his life? Is that an argument that prevented him from filing a grievance? Yes, Your Honor. I believe the argument is that no reasonable inmate under these circumstances would have filed a grievance because, as he states, he was afraid of his life. Well, if he's afraid, then why did he file a citizen's complaint if he's so afraid? Your Honor, as the court in Hemphill recognizes that it might be reasonable for an inmate to complain to outside sources from the jail while not complaining inside because he's afraid of what the deputies at the jail would do. Did I understand you correctly to say that he got this idea to file a citizen's complaint from talking to his defense lawyer? Yes, Your Honor. Is there any explanation for why the defense lawyer didn't say file a jail grievance? There is none in the record. He was represented by counsel at the time? He was represented on his criminal matter by counsel. He didn't think that filing the citizen's complaint wouldn't get back to the officers? Whether you file the complaint directly with the jail, which is what the PLRA requires, whether you go and file a citizen's complaint with City Hall and it works its way through the system, it's going to come back. He didn't think that it would get back to the jailer? I'm not sure what Mr. O'Neill thought at the time, Your Honor. I do know that he was afraid for his life, that he was facing a cover-up of an assault on himself, and under advice of his attorney, he filed a citizen's complaint with what he thought would be an independent judge. When he files the citizen complaint, is he still at the jail or is he now in San Quentin when he files that? My understanding is that he was still at the jail. Okay. You mentioned before you wanted to reserve some time. You're down to about two minutes and change. The final point I would like to make, Your Honor, is that under Albino, I think that his court has the power to enter an order finding that the administrative remedies were unavailable as a matter of law, based on that Mr. O'Neill did not have a chance to review or file any kind of grievance, and because he, under circumstances of his confinement, it would not have been reasonable for him to file one. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court. My name is Christine Van Aken and I represent San Francisco and the individual defendants in this matter. Mr. O'Neill concedes not only that he didn't file a grievance, but that he made no effort to find out whether there was a grievance policy or to take any steps to comply with that policy. A subjective belief in the unavailability of remedies, when it is uncoupled with any efforts to find out whether that belief is true, is not enough. And I submit that that's a holding of this Court from Sapp v. Kimbrell, where the Court rejected a subjective, sincerely held belief by an inmate that he had no further remedies available to him. Let me address first the issue of solitary confinement, since that came up in my colleague's arguments. It's not the case that – well, first let me clarify as a factual matter. San Francisco, as a count, is a large urban county jail, but it's not a supermax facility. It doesn't have separate holding cells for people in solitary. It's not – people in – it's called administrative segregation, and they're confined in two-person cells and they get limited time out in the recreational areas, but they still do get some time. So it's not as if they're completely isolated from other people. And folks who are in solitary receive a visit from a guard once a week to sort of check in with them. And in addition, they still receive a daily visit from a deputy who collects grievance forms. And that's – the Cotteruccio Declaration talks about how grievance forms are collected, and they're collected in person once a day. And I can see that none of this is in the record, and this is because – but let me – let me explain, Judge Fletcher. Mr. O'Neill says in his – in his opposition to the motion to dismiss the complaint – he doesn't say, I was in solitary, so he couldn't file. He just says, I wasn't aware of that, and he says, I was scared for my life. The issue of solitary first appears in the record in his motion for reconsideration and notice of appeal. But in that case, he doesn't say, I was in solitary, and so I couldn't file a grievance. That's an argument that his counsel makes in the papers and before you today that Mr. O'Neill never made. He simply says, I was in solitary. He says, I was in solitary, and he says, I didn't file a grievance because why would I file a grievance with the same people who conspired against me? I mean, that's his response, is I shouldn't have to file a grievance with the folks who violated the rights. So what are we to make of it? Let's assume what he's saying is true. It may or may not be. But let's say – let us assume that he was afraid either for his life, which is what he said literally, or afraid of further beating, assuming that's true that he was beaten, and that he therefore didn't file a grievance. Would that excuse him from filing a grievance if that's true? His subjective, sincere belief would not excuse him from filing a grievance. If that – What if it's a reasonable belief? A reasonable belief would excuse him from filing a grievance, and I think that's clear from this Court's cases. And how do we know that, from what we have in front of us, that that's not a reasonable, sincere belief? It may turn out to be bogus. I got that. Right. But how do we know from what we have in front of us that that's not a reasonable, sincere belief? Sure. The district court specifically rejects that because the court says, look, this is conclusory. You said I was scared for my life, but you don't offer any facts that would demonstrate that that's a reasonable belief. For instance, one fact. Well, we know from – Before you go there, you didn't offer any facts. Now, if this were summary judgment, or even if it's treated under the old form of unenumerated Rule 12, I think if, with pro se, the district judge is required to say, come forward with all the evidence that you have, did the district judge do that? The district judge did that at an earlier point in the proceedings. The district judge did not issue the Rand notice at the time that this motion to dismiss was filed, but – and it wasn't required at that time, I believe, because the Wood decision hadn't issued yet. But what the – I have two responses why that doesn't matter. The first is that the form that Mr. O'Neill filled out in opposition to the motion to dismiss told him he was required to provide declarations or extra record evidence if he – if he needed it. It specifically apprised him of that requirement, the form that he filled out. And that is – I believe it's excerpt of Record 43 or 40 – yes, it's 43. It says that the argument should – should – when you refer to specific facts, those should appear in a declaration. But my other argument is that there's nothing that he discloses today with the assistance of counsel that would make a difference. And Rand makes very clear – Well, wait a minute. When you say today, you mean on appeal? On appeal. That's right. There's nothing – But he can't supplement the record on appeal. He can't – I think that if he – you know, the district court says this is totally conclusory that you're scared for your life. Maybe if he had said these same officers who beat me up are now working in my housing unit, or they're the ones collecting the grievances, or I've been told that there's retaliation against inmates who complain, those are the kinds of facts that might give rise to a reasonable belief. And the district court says you didn't offer any facts, this is conclusory. Now, with the assistance of counsel, Mr. O'Neill is prepared to proffer that he never received the orientation handbook on any prior proceeding. His counsel tells us that if this is remanded, he'll put that in the record. But there's no argument or no – there's no proffer of anything else that he'll put in the record. So Rand doesn't require the court to – But I'm not sure that we ask for proffers of proof when we're on appeal. I think that this Court – I mean, I'm not accustomed to having, I'm going to proffer, and then the failure to proffer is put forward as a problem. We do get sometimes, you know, what will happen if it goes back. I got that. It kind of happens informally. I think that – I think that Rand allows this Court to say, look, it wouldn't have made a difference if he had been apprised that he needs to have these facts and have these declarations. And note that he does, he is apprised that he needs that information. But there's nothing more that he's saying he could say. It's like when you give a proper plaintiff leave to amend. Well, only if it appears that there's something he's going to be able to say. I think it would really elevate form over substance to remand in this case. So if – but if the counsel were to stand up and rebuttal and say, you know, it's entirely possible he could supplement that with fear for his life, what would your response be? Well, if the Court were to allow me an additional response, I would say it should have come in the brief. We should be able to argue that. But I don't think there's anything they'll be able to say in good faith, because actually, Deputy Cotaruccio gives you reason to reject that as well. And here's what it is. He says on the last page of his declaration, he says there are all these different jail facilities and intake happens in County Jail No. 9. And he says, you know, there are other facilities where inmates are housed. And so we know that County Jail 9 is an intake facility. That's where these deputies work. There are hundreds of deputies in the jails. And so we know that Mr. O'Neill is out of the intake facility and in a different facility that he calls solitary because he tells us that. So we have enough from the record that we can infer that he's not seeing these deputies again and that there's not. Oh, you know, that's a pretty difficult inference. We don't know anything about shifts. We don't know anything about rotations. We don't know anything about communications among the guards. I mean, there are lots of reasons that you need to speculate or that we would need to speculate to be pretty sure that he's – that if he is genuinely in fear for his life, take it for the moment that that might be true, that that's either reasonable or unreasonable. I understand the chain of inference you're asking us to draw, and it may be absolutely right, but it's pretty speculative. But, Judge Fletcher, I think the onus is on the inmate to tell the court what the circumstances are. And Judge Brown told this inmate that you haven't given me enough information to believe your claim that you were in fear for your life. And his response to that – Judge Armstrong? I'm sorry. I'm sorry. Sandra Brown, Judge Armstrong. Thank you. Judge Armstrong tells the inmate, your allegations are conclusory. You haven't given me enough information. And his response – he's got two additional filings that he makes after that, and his response is, I shouldn't have to. In addition, at the same time, he's filing a citizen's complaint with City Hall. He's got a lawyer. He's subpoenaing the records. Do you shed any light on whether he's filed a grievance? So my understanding is that he's alleged that he's filed a grievance. I don't know whether that's been processed. I just don't know any of the facts about it. And if it hasn't been – I mean, does he still have a viable 1983 suit arising out of an exhausted claim if that were not to be resolved to his satisfaction? Judge Bivey, I just don't know the law on tolling with respect – I know that the 1983 statute of limitations would have long passed. I think it's one year in California. If there is tolling because he's filed this and unsuccessfully attempted to file a prior suit, I just don't know the answer to that. Statute of limitations can be waived as well. And the statute of limitations can be waived, yes. But I don't – Is there any reason to remand this under Albino? Because we've got some – I hope the right answer is clarification. Yes. Some clarification coming out of Albino as to what the law is as to remand. Certainly, Judge Fletcher. I think there's no reason to remand under Albino. Albino changes the procedure. We now have a summary judgment motion. San Francisco, in fact, made its motion to dismiss in the alternative as a summary judgment motion. Then we have Albino that tells us the first step is for the prison to come forward and show that its procedures were generally available. And that's on page 18, generally available. San Francisco did that by showing it had an orientation policy, deputies accepted these grievances, it had staff who were specifically supposed to help inmates fill out grievances. Second step is for Mr. O'Neill to come forward with some specific reason, and he has the burden of producing evidence that he couldn't avail himself of this generally available policy. And I think that's where this case – his case fails. I think there is nothing for the third step, the resolution of conflicted facts by the district court if summary judgment can't be granted. So I think Albino adds a very helpful framework, but it tells us that at step two, Mr. O'Neill hasn't carried his burden of – his burden of production. Well, what troubles me about the case in which it's – the way it's been litigated below is that he was pro se, and I'm not sure in a realistic functional way he was given an appropriate Rand warning that he really had to come forward at this time. It would have been more apparent probably had it been summary judgment. It would have been, I think, perhaps more important, more apparent to the district judge that that was going to be required. On the other hand, if a remand is futile, it's futile. Right. I think a remand – I think it's pretty clear that a remand is futile in this case just because there's nothing to think that the result would be any different. There's nothing to give reasonableness to his subjective belief of fear for his life. So my time has expired. I see your time has expired. Further questions? Thank you, Ms. Van Aken. Mr. Vitera. Thank you, Your Honor. First, I'd like to emphasize that the sheriff's deputies have not met their burden under Albino. Albino holds that they must show that an administrative remedy is available. Counsel has stated that in the record there is that the San Francisco County Jail had staff who accepted the grievances and had agreements received. This is exactly the same facts that were present in Albino. And the Ninth Circuit found that that was insufficient to show availability. Counsel also stated that the onus is on the inmate to show that the administrative remedies were unavailable for Albino. That's simply not the case. It is the onus on the first parties, on the county, and on the defendants to show that. Counsel also stated that it's a subjective belief that he was afraid for his life. It's not simply a subjective belief. Mr. O'Neill did believe that, and it was a reasonable basis for him to believe that, namely how he was confined, what happened to him on the first day, that he was processed and being intaked at a jail. And he preceded these facts were in the complaint and again reemphasized in his motion to dismiss, or his opposition to his motion to dismiss. So they were before the district court. Finally, the facts that counsel has emphasized about solitary confinement, about other details concerning the grievance procedure, are simply not in the record. And so it should not be concerned by the court. Roberts. Thank you very much. The case just argued is submitted. Mr. Pateta, we want to thank you very much. I understand you've taken the case on a pro bono basis, and we appreciate that. A lot. Thank you.
judges: Silverman, Fletcher, Bybee